IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHENZHEN WANFAN TECHNOLOGY CO. LTD., | ) ) ) | |
| Plaintiff, | ) ) | No. 23-cv-02330 |
| v. | ) ) | Judge Andrea R. Wood |
| ORBITAL STRUCTURES PTY LTD., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shenzhen Wanfan Technology Co. Ltd. ("Wanfan") is a Chinese company that operates several e-commerce stores. Through its stores, Wanfan sells a multi-color cube toy that Defendant Orbital Structures Pty Ltd. ("Orbital") contends infringes on its own registered trademark and copyrights. Thus, Orbital has submitted numerous complaints to that effect with the marketplace platform that hosts Wanfan's stores. Because it claims that Orbital's complaints are frivolous and improperly interfere with its business, Wanfan has brought the present action. Now before the Court is Orbital's motion to dismiss Wanfan's complaint for lack of personal jurisdiction, improper venue, and insufficient service of process. (Dkt. No. 13.) For the reasons that follow, the motion is denied.

**BACKGROUND**

As alleged in the Complaint, Wanfan is a limited liability company organized under the laws of China. (Compl. ¶ 4, Dkt. No. 1.) Using the Amazon marketplace platform, Wanfan operates multiple e-commerce stores that sell items to consumers in the United States. (Compl. ¶¶ 4, 12; Pl.'s Opp'n, Ex. A ("Qun Lin Decl.") ¶¶ 2–3, Dkt. No. 18-1.) Among the items that

Wanfan sells through its stores is a multi-color cube toy marketed under the trademark "iKeelo" ("iKeelo Toy"). (Compl. ¶ 13; Qun Lin Decl. ¶ 2.)

According to Wanfan, beginning around June 2022, Amazon has repeatedly removed listings for the iKeelo Toy due to complaints filed by Orbital claiming that the iKeelo Toy infringes on its own trademark and copyrights. (Compl. ¶¶ 25–26; Qun Lin Decl. ¶¶ 5–6.) Orbital is a limited company formed under the laws of Australia. (Compl. ¶ 5; Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. ("Saper Decl.") ¶ 3, Dkt. No. 14-1.) Its principal place of business is located in Australia, and it has no physical presence outside of that country. (Compl. ¶ 6; Saper Decl. ¶ 4.) In its complaints to Amazon, Orbital asserts that the iKeelo Toy infringes its "CMY Cubes" trademark that it registered with the United States Patent and Trademark Office ("USPTO"), and related copyrights. (Compl. ¶¶ 22–26.)

Wanfan has brought the present action claiming that Orbital's complaints to Amazon are frivolous and have damaged its business. Its complaint asserts the following claims: a claim seeking declarations pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Wanfan's iKeelo Toy does not infringe Orbital's trademark or copyrights, and that Orbital's CMY Cubes mark is invalid (Counts I–IV); a claim under the Lanham Act, 15 U.S.C. § 1120, for false or fraudulent trademark registration (Count V); and state-law claims for tortious interference with contract and with a prospective business expectancy (Counts VI–VII).

## DISCUSSION

Orbital raises three arguments for dismissal of Wanfan's complaint. First, Orbital contends that Wanfan failed to properly serve it. Second, Orbital claims that this Court lacks personal jurisdiction over it. And finally, Orbital argues that the Northern District of Illinois is an improper venue for this case.

Federal Rule of Civil Procedure 12(b)(5) allows a party to challenge the sufficiency of service of process, and a Rule 12(b)(2) motion for lack of personal jurisdiction "tests whether th[e] Court has the 'power to bring a person into its adjudicative process.'" *Forde v. Arburg GmbH+Co KG*, No. 20-cv-02904, 2021 WL 148877, at *2 (N.D. Ill. Jan. 15, 2021) (quoting *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)). "Where there has been insufficient service of process, the court does not have personal jurisdiction over the defendant. Thus, motions pursuant to Rule 12(b)(5) and Rule 12(b)(2) are interrelated and the standards are the same for both motions." *JP Morgan Chase Bank v. Jenkins*, No. 14 C 4278, 2015 WL 603855, at *3 (N.D. Ill. Feb. 12, 2015). For both, the plaintiff bears the burden of showing that service was proper and demonstrating the existence of jurisdiction, and the Court may consider affidavits and other evidence. *Forde*, 2021 WL 148877, at *2; *JP Morgan*, 2015 WL 603855, at *3. Allegations in the complaint that are not contradicted by facts in affidavits or other evidence are accepted as true. *Forde*, 2021 WL 148877, at *2. A similar standard applies to a Rule 12(b)(3) motion to dismiss for improper venue. *Aon plc v. Infinite Equity, Inc.*, No. 19-cv-07504, 2021 WL 4034068, at *9 (N.D. Ill. Sept. 3, 2021). Since "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction," *Swaim v. Moltan Co.*, 73 F.3d 711, 719 (7th Cir. 1996), the Court will consider that issue first.

I.  **Service of Process**

Given that Orbital is an Australian company whose operations are conducted entirely in Australia, Wanfan hired an Australian process server to serve Orbital at both its registered address ("Katralis Address") and its principal place of business. As reflected on the docket in this case, summons was successfully delivered to an individual named Deidre at the Katralis Address on June 23, 2023. (Dkt. No. 11.) However, Orbital contends that this service was improper, as it has no physical presence at the Katralis Address, which instead corresponds to Orbital's former

3

accounting firm, and it has not otherwise authorized anybody by the name of Deidre to accept service on its behalf. (Saper Decl. ¶¶ 8–10.)

Federal Rule of Civil Procedure 4(h)(2) provides that a foreign corporation may be served at a place outside the United States in any manner prescribed by Rule 4(f), subject to an exception discussed further below. Under Rule 4(f)(1), a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents." The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), is a multilateral treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Australia is a signatory to the Hague Convention. *Status Table*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last updated June 23, 2023). Thus, the propriety of service is evaluated under the Hague Convention's standards. *Weiss v. Reilly*, No. CV 16-02004-BRO (AJWx), 2017 WL 11635469, at *3 (C.D. Cal. Jan. 10, 2017).

Typically, "[t]he primary means of service under the Hague Convention is through a receiving country's central authority, which receives requests for service, arranges for service, and returns certificates of service." *Parsons v. Shenzen Fest Tech. Co.*, No. 18 CV 08506, 2021 WL 767620, at *2 (N.D. Ill. Feb. 26, 2021). Nonetheless, Article 10 of the Hague Convention "preserves the ability of parties to effect service through means other than a receiving country's Central Authority as long as the receiving country has not objected to the specific alternative means of service used." *Id.* Australia has not objected to any part of Article 10. *Australia*—

4

*Central Authority & practical information*, Hague Convention on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=878 (last updated Nov. 17, 2022). Under Article 10(c), the Hague Convention allows "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 10, Nov. 15, 1965, 20 U.S.T. 361. Accordingly, "[w]ith regard to Article 10 of the Convention, Australia permits personal service of process and does not object to the use of private process servers, diplomatic channels or local agents." *Weiss*, 2017 WL 11635469, at *3 (internal quotation marks omitted).

Consistent with Article 10(c), a process server personally delivered the complaint and summons to the Katralis Address, Orbital's registered address. While Orbital contends it no longer has any presence at the Katralis Address, as of July 22, 2023, that address remained listed as Orbital's registered address in the Australian Securities and Investment Commission's database. (Pl.'s Opp'n, Ex. B, Dkt. No. 18-2.) Notably, Orbital never states at what address it should have been served. And, under Australian law, "a document may be served on a company by . . . leaving it at, or posting it to, the company's registered office." *Corporations Act 2001* (Cth) s 109X(1)(a) (Austl.). Here, the process server left the summons and complaint at the address listed as Orbital's registered office, and the Court finds that sufficient to effect service, regardless of whether Deidre was authorized to accept service on Orbital's behalf.

Rather than respond to Wanfan's arguments demonstrating that it properly effected service pursuant to Rule 4(f)(1), Orbital pivots in its reply brief to argue that service by personal delivery was improper under the aforementioned exception listed in Rule 4(h)(2). Specifically, Rule 4(h)(2) provides that a foreign corporation cannot be served outside the United States by

5

"personal delivery under [Rule 4](f)(2)(C)(i)." However, Rule 4(f)(2)(C)(i) falls within Rule 4(f)(2), which articulates methods of service where "there is no internationally agreed means, or if an international agreement allows but does not specify other means." Rule 4(h)(2)'s exception should be read according to its terms—it applies to personal delivery otherwise allowable under Rule 4(f)(2)(C) but does not limit personal delivery under any other subsection of Rule 4(f), including Rule 4(f)(1). *E.g.*, *Tile, Inc. v. Computron Sys. Int'l*, No. 20-cv-2297 (BMC), 2021 WL 3861721, at *2 (E.D.N.Y. Aug. 30, 2021) ("Subsection (C), it seems to me, is limited to situations where the Hague Convention does not apply or foreign law does not permit personal service on a business entity. In that situation, Rule 4(h)(2) requires plaintiff to find another means to effect service."). Accordingly, courts have found sufficient under Rule 4(f)(1) the use of process servers to effect service of a foreign company in Australia. *See, e.g.*, *Witt v. TFS Surgical (US), Inc.*, No. 16-1042 (JRT/BRT), 2017 WL 3267734, at *3–4 (D. Minn. July 12, 2017). Likewise, this Court finds that Wanfan properly served Orbital by having a process server deliver the complaint and summons at the Katralis Address.

### II. Personal Jurisdiction

Having found that Orbital was properly served, the Court next considers whether it may exercise personal jurisdiction over it. Wanfan argues that exercising jurisdiction over Orbital is proper under Illinois's long-arm statute based on its contacts with Illinois. Moreover, to the extent Illinois's long-arm statute does not authorize jurisdiction, Wanfan asserts that the Court may nonetheless assert jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).

#### A. Long-Arm Statute

When subject-matter jurisdiction is predicated on the presence of a federal question and supplemental jurisdiction, this Court first looks to Illinois's long-arm statute to determine whether Orbital is subject to personal jurisdiction in Illinois. *United Airlines, Inc. v. Zaman*, 152

F. Supp. 3d 1041, 1046–47 (N.D. Ill. 2015). The Illinois long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Thus, the question before the Court is whether Orbital has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general or specific. Wanfan does not contend that this Court has general jurisdiction over Orbital, so the present inquiry will be limited to whether Wanfan has shown that this Court may exercise specific jurisdiction. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Specifically, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Thus, there is specific jurisdiction where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* In addition, the exercise of jurisdiction "must also comport with traditional notions of fair play and substantial justice." *Id.*

Here, the Court rejects Wanfan's contentions that personal jurisdiction is properly exercised under Illinois's long-arm statute based on Orbital's interference with Wanfan's Illinois customer base. Orbital cannot be haled into an Illinois court based solely on the fact that Wanfan makes sales in the state. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("The relation between the defendant and the forum

'must arise out of contacts that the defendant *himself* creates with the forum state.'" (quoting *Walden*, 571 U.S. at 284)). And Wanfan does not claim that Orbital's challenged conduct impacts Wanfan's Illinois sales any differently than its sales to customers in other states. Moreover, with respect to its false trademark registration claim, Wanfan argues that this Court has personal jurisdiction based on Orbital's use of an Illinois-based lawyer to file the CMY Cubes trademark application. But the fact that the lawyer Orbital retained to file a trademark application with the USPTO (an agency with no offices in Illinois[1]) was based in Illinois as opposed to some other state was merely a fortuitous contact that does not establish a relationship between Illinois and claims related to the trademark's registration. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (explaining that the purposeful availment requirement is meant to "ensure[] that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue"); *cf. Spitz v. Starr Indem. & Liab. Co.*, No. 21 C 1044, 2023 WL 6276559, at *4 (N.D. Ill. Sept. 26, 2023 ("[T]he Seventh Circuit and numerous other courts have made clear that the fact that an out-of-state attorney represents a client domiciled in the forum state does not suffice to establish personal jurisdiction over the attorney in that state.").

For these reasons, the Court finds that it cannot exercise personal jurisdiction over Orbital pursuant to Illinois's long-arm statute.

### B. Rule 4(k)(2)

Although personal jurisdiction is unavailable under Illinois's long-arm statute, Wanfan asserts that Rule 4(k)(2) provides an alternative basis for this Court to exercise personal

---

[1] *USPTO locations*, U.S. Patent and Trademark Office, https://www.uspto.gov/about-us/uspto-office-locations (last visited Jan. 28, 2024).

jurisdiction. Rule 4(k)(2) has sometimes been described as "function[ing] as a sort of federal long-arm statute." *CSB Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 844 (N.D. Ill. 2009) (internal quotation marks omitted). It provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of services establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). The provision was added "to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001).

For a district court to exercise jurisdiction based on Rule 4(k)(2), the following conditions must be present: "(1) the plaintiff's claims must be based on federal law; (2) no state could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Here, five of the seven counts in the complaint assert claims arising under federal laws—either the Lanham Act or the Copyright Act. *Cf. Samuel C. Johnson 1988 Tr. v. Bayfield County*, 520 F.3d 822, 827–28 (7th Cir. 2008) ("[T]he Declaratory Judgment Act . . . does not serve as an independent basis for federal jurisdiction. Instead, jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." (internal quotation marks and citation omitted)). As to the second condition, the Seventh Circuit has declined to require a plaintiff to prove that the

9

defendant cannot be subject to the jurisdiction of any state. *ISI Int'l*, 256 F.3d at 552. Rather, it is up to a defendant that wants to "preclude use of Rule 4(k)(2) . . . to name some other state in which the suit could proceed." *Id.* "If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* That is the case here, as Orbital has not suggested another state that may have jurisdiction.

Orbital has not identified and the Court is not aware of any federal law that would preclude it from exercising jurisdiction. Thus, the remaining question is whether the exercise of jurisdiction is consistent with the Constitution. Unlike the inquiry under Illinois's long-arm statute, which considers only a defendant's contacts with Illinois, the inquiry under Rule 4(k)(2) considers a defendant's contacts with the nation as a whole. *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 854 (N.D. Ill. 2005) ("To establish jurisdiction under Rule 4(k)(2) a defendant must have sufficient contacts with the United States as a whole to satisfy the due process requirements of the Fifth Amendment."). Wanfan contends that Orbital's registration of its trademark with the USPTO and its complaints filed with a U.S.-based company, Amazon, are sufficient contacts with the nation as a whole, and therefore this Court can exercise jurisdiction pursuant to Rule 4(k)(2).

In response to Wanfan's Rule 4(k)(2) argument, Orbital asserts that Rule 4(k)(2) does not remove constitutional barriers to jurisdiction such that the Court cannot exercise jurisdiction where Orbital lacks the requisite minimum contacts with Illinois. But Orbital misapprehends the law. Unquestionably, even under Rule 4(k)(2), jurisdiction must be exercised within the bounds of the Constitution. As the Seventh Circuit has explained, "[w]hile Rule 4(k)(2) applies a broader geographic standard for which contacts are relevant, the ***minimum*** in the 'minimum contacts'

10

that are constitutionally sufficient to support general or specific jurisdiction is the same." *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012). Orbital errs by conflating the geographic scope to which the constitutional standard is applied with the constitutional standard itself. *See id.* ("The difference between litigating under state law in state court and under federal law in federal court is that the federal Constitution and federal law allow a plaintiff to aggregate a defendant's contacts with the entire nation rather than the forum state."). As a result, it offers no rebuttal to Wanfan's arguments as to Orbital's minimum contacts with the United States.

Regardless, the Court is satisfied that Orbital has sufficient contacts with the United States, such that exercising jurisdiction under Rule 4(k)(2) is proper. First, there is some disagreement among courts regarding whether the mere registration of a trademark or patent with the USPTO, by itself, constitutes adequate contact in an infringement case. *Compare VMR Prods., LLC v. V2H ApS*, No. CV 13-7719 CBM (JEM), 2014 WL 12591932, at *3 (C.D. Cal. Aug. 4, 2014) ("Courts have ruled that an application with the USPTO filed by a non-U.S. defendant constitutes purposeful availment for purposes of jurisdiction under Rule 4(k)(2)."), *with Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 136 (S.D.N.Y. 2020) ("[T]he weight of authority rejects basing federal long-arm jurisdiction on the mere registration of a U.S. trademark."). This Court may account for the registration as a relevant contact without definitively choosing a side, since Orbital failed to argue the point. Moreover, this case also involves a claim of false registration, such that the registration itself is a contact directly related to the litigation. *See, e.g., Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416–17 (Fed. Cir. 2009) (finding that registration of a patent was a relevant contact in the Rule 4(k)(2) inquiry where the plaintiff's legal malpractice claim arose from the defendant's filing of a deficient patent application); *Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2017 WL 658711, at *8 (D.

11

Md. Feb. 16, 2017) ("[A] USPTO application might be a jurisdictionally significant contact under Rule 4(k)(2) if that filing is itself the basis of the alleged injury . . . ."). Finally, Orbital's complaints filed with a U.S.-based company, Amazon, that resulted in the takedown of Wanfan's listings are relevant contacts. *E.g.*, *Glacio Inc. v. Dongguan Sutuo Indus. Co.*, No. 2:22-cv-00029-MKD, 2023 WL 6326587, at *4 (E.D. Wash. Sept. 28, 2023) (finding that a defendant had sufficient contacts with the United States where it "sought to enforce one of [its] patents by sending a notice of infringement to Amazon, a U.S. company, relating to the product listing of [the plaintiff]" and "[t]he case [arose] directly out of th[o]se contacts").

The Court finds that Orbital has had sufficient contacts with the United States to support personal jurisdiction over Wanfan's federal claims. Further, the Court concludes that exercising jurisdiction would not be unfair. Orbital registered its trademark in this country and is enforcing that trademark to interfere with Wanfan's sales efforts in this country. It is therefore fairly subject to litigation in a United States district court in connection with those efforts. *See, e.g.*, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1082 (10th Cir. 2008) ("Defendants did not merely inform plaintiffs of their rights and invite settlement discussions prior to potential litigation, but took affirmative steps with third parties that suspended plaintiffs' ongoing business operations. . . . In such circumstances, we cannot say that requiring defendants to answer for their actions in Colorado is unfair."). Consequently, the Court will not dismiss Wanfan's complaint for lack of personal jurisdiction.[2]

---

[2] Because the Court has personal jurisdiction over the federal claims, it can also hear the state-law claims under the doctrine of pendent personal jurisdiction. *See Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 450 (7th Cir. 2000) ("In our view, the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under § 1367."); *Doe v. Cotterman*, No. 17 C 58, 2018 WL 1235014, at *5 (N.D. Ill. Mar. 9, 2018) ("Under the doctrine of pendent personal jurisdiction, a court may exercise its discretion to hear claims as to which personal

### III. Venue

While Orbital argues that venue is improper in this District, under 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district." Orbital therefore has no basis to argue that the case should be dismissed for improper venue.

### CONCLUSION

For the foregoing reasons, Orbital's motion to dismiss for improper service of process, lack of personal jurisdiction, and improper venue (Dkt. No. 13) is denied.

ENTERED:

Dated: January 29, 2024

                                                Andrea R. Wood
                                                United States District Judge

---

jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." (internal quotation marks omitted)).