**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHENZHEN WANFAN TECHNOLOGY CO. LTD., | ) | |
| Plaintiff and Counter-Defendant, | ) | No. 23-cv-02330 |
| v. | ) | Judge Andrea R. Wood |
| ORBITAL STRUCTURES PTY LTD., | ) | |
| Defendant and Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff and Counter-Defendant Shenzhen Wanfan Technology Co. Ltd. ("Wanfan") sells a multi-color cube toy that Defendant Orbital Structures Pty Ltd. ("Orbital") contends infringes on its own registered trademarks and copyright. Orbital has submitted numerous complaints to that effect with the marketplace platforms through which Wanfan sells its toy. In response, Wanfan brought the present action claiming that Orbital's complaints are frivolous and improperly interfere with its business. Relevant here, Wanfan seeks a declaratory judgment that it did not infringe Orbital's trademarks and that those marks are invalid. Wanfan also asserts a claim alleging that Orbital fraudulently procured its trademark registrations. For its part, Orbital has asserted counterclaims against Wanfan, including counterclaims for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a). Now before the Court are Wanfan's motion for partial summary judgment (Dkt. No. 51) and Orbital's motion for partial summary judgment (Dkt. No. 54). For the reasons that follow, Wanfan's motion is granted in part and denied in part, and Orbital's motion is denied.

## BACKGROUND

The following facts are undisputed.

In 2020, Orbital developed and began selling color prism cube toys. (Pl.'s Resp. to Def.'s Statement of Additional Facts in Opp'n to Pl.'s Mot. for Summ. J. ("PRDSAF") ¶ 2, Dkt. No. 67.) Its first product was the CMY Cube, a color cube made up of the primary colors cyan, magenta, and yellow. (Def.'s Resp. to Pl.'s Statement of Material Facts in Supp. of Pl.'s Mot. for Summ. J. ("DRPSF") ¶¶ 6–7, 14, Dkt. No. 56.) Specifically, the cube has clear faces with a filter on each face colored in one of cyan, magenta, or yellow. (*Id.* ¶ 7.) Under the mathematical concept of color creation, the colors cyan, magenta, and yellow can be used to create any possible color. (*Id.* ¶ 11.) The CMY Cube employs that concept "to create an ever changing spectrum of color." (*Id.* ¶ 15.)

Orbital obtained a federally registered trademark for CMY CUBES, Reg. No. 6,913,023. (DRPSF ¶ 1; PRDSAF ¶ 1.) It also has a federally registered trademark for the following design featuring the CMY CUBES wordmark, Reg. No. 7,070,552: (DRPSF ¶ 2; PRDSAF ¶ 1.)[1] Along with the flagship CMY Cube toy, Orbital markets several other products under its CMY CUBES marks, including cubes or other geometric shapes featuring color concepts other than cyan, magenta, and yellow. (PRDSAF ¶ 4.)

Like Orbital, Wanfan also sells a color prism cube that employs the color creation properties of cyan, magenta, and yellow. (*Id.* ¶¶ 13, 16; *see also* Pl.'s Statement of Material Facts, Ex. B-12, Dkt. No. 52-14.) Wanfan sells its product under its own federally registered

[1] Both parties' Local Rule 56.1 submissions identify the design trademark's registration number as 7,707,552, but the evidence shows that the proper registration number is 7,070,552. (Pl.'s Statement of Material Facts, Ex. B-2, Dkt. No. 52-4.)

trademark, iKeelo, Reg. No. 5,709,048. (DRPSF ¶ 3.) Both its listings and packaging for its cube toy use the term CMY Cube, or similar variations such as CMY Color Cube, along with its iKeelo trademark. (PRDSAF ¶¶ 13–16.)

After Orbital began lodging complaints with the marketplace platforms over Wanfan's use of its CMY CUBES marks, Wanfan brought the present action. Relevant here, Count I of Wanfan's complaint seeks a declaration of non-infringement of the CMY CUBES marks, Counts III and IV seek a declaration that the CMY CUBES marks are invalid and must be cancelled, and Count V asserts a claim of fraudulent trademark registration under 15 U.S.C. § 1120. In turn, Orbital has asserted counterclaims for trademark infringement (Counts I and III), along with claims for unfair competition (Count II) and false designation of origin (Count III), in violation of 15 U.S.C. § 1125(a), and a claim under Illinois's Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count V).

## DISCUSSION

Wanfan seeks summary judgment as to Counts I, III, and IV of its complaint, which seek declaratory judgments as to its non-infringement and the invalidity of the CMY CUBES marks, and Counts One and Three of Orbital's counterclaims, which allege trademark infringement against Wanfan. On the other hand, Orbital believes it is entitled to summary judgment in its favor on the complaint's invalidity claims in Counts III and IV, and on the fraudulent registration claim in Count V.[2] Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any

[2] The Complaint also asserts claims for a declaration of non-infringement of Orbital's copyright in Count II, tortious interference with contract in Count VI, and tortious interference with prospective business expectancy in Count VII. Neither party seeks summary judgment as to those claims. Nor do the parties seek summary judgment as to any of Orbital's counterclaims.

material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). With respect to Counts III and IV, as to which both parties seek summary judgment, the Court must take "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003).

Because Wanfan's claim of non-infringement is based in part on the alleged invalidity of the CMY CUBES marks, the Court will begin by addressing the non-infringement and invalidity claims and infringement counterclaims together. Then, the Court will turn to consider whether Orbital is entitled to summary judgment on the fraudulent registration claim. Finally, the Court will conclude by addressing Wanfan's claim that it is entitled to attorneys' fees.

## I. Non-Infringement and Invalidity

There is no dispute of fact that one of the products sold by both Orbital and Wanfan is a color prism cube made up of the primary colors cyan, magenta, and yellow. Nor is there any dispute that both products are listed using the term "CMY Cube" or some closely similar variation. While Orbital claims that its CMY CUBES trademarks give it the exclusive right to use those marks or any confusingly similar term in connection with the sale of color cube toys, Wanfan contends that the marks are merely descriptive and have acquired no secondary association with Orbital's products. Thus, Wanfan argues that the CMY CUBES trademarks are invalid and should be cancelled. And even if there is a question of fact as to the marks' validity, Wanfan asserts that it is still entitled to summary judgment as to the non-infringement claim because it fairly used the marks to describe its own cyan, magenta, and yellow color cube toy.

To establish a claim for trademark infringement, the trademark holder must show first that its mark is protectible and then that the alleged infringer's use of the mark is likely to cause

confusion among consumers. *SportsFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). "Whether a mark is entitled to protection depends on where it falls on a spectrum of increasing distinctiveness from (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Ill. Tamale Co. v. LC Trademarks, Inc.*, 164 F.4th 648, 656 (7th Cir. 2026). Whereas suggestive, arbitrary, and fanciful terms are inherently distinctive and therefore are automatically afforded trademark protection, terms that are generic or descriptive of the products or services being sold generally cannot be registered. *SportsFuel*, 932 F.3d at 598–99. "This rule ensures that competitors can market their products by describing them. It also reflects that descriptors are a poor means to distinguish among competing products." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (citation omitted). However, "descriptive terms can ***become*** distinctive by acquiring a secondary meaning, that is, the mark has grown distinctly and uniquely associated with the original seller." *Id.* (internal quotation marks omitted).

Here, Wanfan contends that the CMY CUBES trademarks are invalid because the term CMY CUBES simply describes the product being sold and has not acquired a secondary meaning.

### A. Distinctiveness of the CMY CUBES Mark

"A mark is descriptive when it describes the product category to which the brand belongs. Descriptive phrases refer to a characteristic of the product. But they need not be common phrases." *SportsFuel*, 932 F.3d at 599 (internal quotation marks and citations omitted). By contrast, the more distinctive category of suggestive marks employs terms or phrases that "do not directly and immediately describe an aspect of the goods" but instead "require an observer or listener to use imagination and perception to determine the nature of the goods." *Id.* (internal quotation marks omitted). Because the CMY CUBES marks are registered, Orbital is afforded "one of two presumptions: (1) that [its] registered trademark is not merely descriptive or generic;

or (2) that if descriptive, the mark is accorded secondary meaning." *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Orbital does not deny that it has offered no evidence of secondary meaning in connection with its registration application, and therefore it is entitled to the first presumption—that its CMY CUBES marks are at least suggestive. (PRDSAF ¶ 1); *Spigen*, 926 F.3d at 420. Nonetheless, that presumption is rebuttable and "evaporates as soon as evidence of invalidity is presented." *Ill. Tamale Co.*, 164 F.4th at 656 (internal quotation marks omitted). Effectively, the presumption functions to shift the burden of production to the alleged infringer. *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007).

Here, the Court finds that CMY CUBES is a descriptive mark. There is no dispute that the term "CMY" as used in CMY CUBES is an abbreviation for cyan, magenta, and yellow. (DRPSF ¶ 11.) Wanfan has also offered opinions from its expert to the effect that "'CMY' is a generally used abbreviation for 'cyan, magenta and yellow' in the print or color industry." (*Id.* ¶ 8.)[3] Thus, Orbital's marks consist of an abbreviation for cyan, magenta, and yellow together with the word cubes, and those marks are being used in connection with its sale of a toy cube with cyan, magenta, and yellow faces. *See Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986) ("[W]e do not believe that the principle that the validity of a mark is to be determined by looking at the mark as a whole precludes a court from examining the meanings of the component words in determining the meaning of the mark as a whole."). Connecting the marks and the product requires "[n]o flight of imagination or keen logical

[3] While Orbital objects to the admissibility of many of Wanfan's expert's opinions, it acknowledges that the expert can properly opine that "(1) CMY is short for Cyan, Magenta, and Yellow and (2) that CMY is a term of art in the print or color industry." (Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 5, Dkt. No. 55.) Because those points are enough for this Court's present analysis, it declines at this time to reach any other questions as to the admissibility of the expert's opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

insight." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992) (citation omitted).

That CMY is an abbreviation does little to alter the analysis because "[a]bbreviations for generic or common descriptive phrases must be treated similarly." *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 488 (7th Cir. 1982) (holding that "MBE" as used as an abbreviation for "Multistate Bar Examination" is descriptive); *see also NYC ex rel. FDNY v. Henriquez*, 98 F.4th 402, 415 (2d Cir. 2024) ("Recognizable abbreviations for inherently descriptive (or generic) marks are usually themselves inherently descriptive (or generic)." (internal quotation marks omitted)). While the Seventh Circuit has acknowledged that it is possible "that the public might become acquainted with initials used in connection with a product without ever being aware that the initials were derived from, or stood for, a descriptive phrase or a generic name," it further observed that such a circumstance was "rather improbable, because the connection between the initials and the descriptive words is in normal course very likely to become known." *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 993 (7th Cir. 1989). Wanfan's evidence demonstrates that the public can easily make the connection that the CMY abbreviation stands for cyan, magenta, and yellow. Indeed, the connection is plainly revealed in Orbital's design mark, which uses cyan as the font color for the "C," magenta as the font color for the "M," and yellow as the font color for the "Y."

If that connection were not apparent enough, Orbital's product listings spell it out in plain English. For example, its product is listed on Amazon.com as "CMY Cubes Original (50mm)—Cyan, Magenta & Yellow Cube," and the product description explains that "[w]ith primary colors Cyan, Magenta, and Yellow (CMY), this CMY Subtractive Color Cube lets you explore the world of color in a unique way." (DRPSF ¶ 12); *FN Herstal, S.A. v. Clyde Armory, Inc.*, 123

F. Supp. 3d 1356, 1372 (M.D. Ga. 2015) ("If a trademark claimant uses an abbreviation . . . in conjunction with its underlying phrase, courts are reluctant to find that the abbreviation has an independent meaning distinct from the underlying phrase."), *aff'd*, 838 F.3d 1071 (11th Cir. 2016).

Orbital attempts to resist the conclusion that its CMY CUBES marks are descriptive by pointing to the other products it offers that are either not cubes or not shaded in cyan, magenta, and yellow. But the fact that Orbital expanded its product line beyond just cyan, magenta, and yellow cubes does not mean that it acquired the right to preclude other sellers of cyan, magenta, and yellow cubes from accurately describing their product as a CMY cube. *See Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 81 (7th Cir. 1977) ("[E]ven if [the plaintiff] had given its light beer a characteristic not found in other light beers, it could not acquire the exclusive right to use the common descriptive word 'light' as a trademark for that beer. . . . Otherwise a manufacturer could remove a common descriptive word from the public domain by investing his good with an additional quality, thus gaining the exclusive right to call his wine 'rose,' his whiskey 'blended,' or his bread 'white.'"). Because the CMY CUBES marks exactly describe the first marked product—a cube with faces of cyan, magenta, and yellow—there is no question of fact that the marks are best classified as descriptive.

### B. Secondary Meaning

Although the CMY CUBES marks are descriptive, they may still be protectible if they have acquired secondary meaning. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman*, 267 F.3d at 641. Put differently, secondary meaning exists where "there is a mental

association in buyers' minds between the alleged mark and a single source of the product." *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989). "Whether a product has acquired secondary meaning 'is a question of fact, and thus summary judgment is appropriate only if no reasonable fact finder could decide' for the nonmoving party." *Rebel Athletic Inc. v. Lundberg*, No. 1:22-CV-3330, 2026 WL 393005, at *17 (N.D. Ill. Feb. 11, 2026) (quoting *Spigen*, 926 F.3d at 424).

Having already benefited from and lost the presumption of inherent distinctiveness afforded to it from its successful registration of the CMY CUBES marks, Orbital has the burden of proving that those marks have secondary meaning. *Spigen*, 926 F.3d at 424 ("The Lanham Act extends one of two presumptions—either that the mark is inherently distinctive ***or*** that it has acquired distinctiveness. Registration owners do not get both." (internal quotation marks and citation omitted)); *Baig v. Coca-Cola Co.*, 69 F. Supp. 3d 766, 777 (N.D. Ill. 2014) ("The burden is on a [trademark claimant] to demonstrate secondary meaning . . . ."). Given how directly the term CMY CUBES describes its product, Orbital's burden is particularly heavy. *E.g.*, *Box Acquisitions, LLC v. Box Packaging Prods., LLC*, 32 F. Supp. 3d 927, 936 (N.D. Ill. 2014) ("A [trademark claimant] may face a heightened burden because the more descriptive the term, the greater the evidentiary burden to establish secondary meaning." (internal quotation marks omitted)). "[A] court can consider several factors to decide whether secondary meaning has been acquired or established: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998). Direct evidence in the form of consumer surveys or consumer testimony is considered to be the most "helpful type of evidence of secondary meaning." *Buford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 590 (7th Cir.

2015), *overruled on other grounds by LHO Chi. River, LLC v. Perillo*, 942 F.3d 384 (7th Cir. 2019). On the other hand, "evidence of sales, advertising and use is entirely circumstantial, and courts have noted that this type of evidence alone is often insufficient to establish secondary meaning." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992).

As direct evidence of secondary meaning, Orbital offers consumer testimony in the form of declarations from seventeen of its customers. (PRDSAF ¶ 21; Def.'s Resp. to Pl.'s Statement of Additional Facts in Opp'n to Def.'s Mot. for Summ. J. ("DRPSAF") ¶ 12, Dkt. No. 81.) Wanfan objects to the admissibility of those declarations and asks the Court not to consider them. Thus, the Court begins by discussing the consumer-testimony evidence before considering Orbital's showing as to the remaining secondary-meaning factors.

*1. Consumer Testimony*

Shortly before filing its brief in opposition to Wanfan's summary judgment motion and its own motion for partial summary judgment, Orbital disclosed for the first time seventeen witnesses whose declarations supply the consumer testimony upon which it relies as direct evidence of secondary meaning. (DRPSAF ¶ 12.) Wanfan asserts that this Court should not consider evidence from those witnesses because they were untimely disclosed about six months after the close of fact discovery.

Federal Rule of Civil Procedure 26(a)(1) requires, among other things, the prompt disclosure of fact witnesses. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). And Rule 26(e) requires a party to timely supplement its disclosures if it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Orbital acknowledges the untimeliness of its disclosure of the seventeen consumer-testimony witnesses but contends that its lateness is excusable because those witnesses "volunteered at the last minute to submit declarations in support of Defendant for this case" and Orbital's "[c]ounsel was unaware of these witnesses until the day they were disclosed to" Wanfan. (DRPSAF ¶ 12.) At a status hearing, Orbital explained to the Court that the seventeen witnesses only became known to it after they responded to a mass email about the lawsuit that it sent to its customers in the course of preparing its response to Wanfan's motion for summary judgment. That explanation, however, makes clear that Orbital's late disclosure is entirely without justification. Again, direct evidence like consumer testimony is the strongest evidence of secondary meaning, and Wanfan has made it known from the outset of the case that it believes the CMY CUBES marks are merely descriptive and have "not acquired secondary meaning." (Compl. ¶¶ 40–41, 46–47, Dkt. No. 1.) Orbital claims that it was unaware of the seventeen witnesses prior to the day it disclosed them, but Orbital's lack of awareness appears to have resulted from its failure to look for the witnesses until it was in the midst of preparing its opposition brief. That delay cannot be excused given that Orbital knew from the beginning that there was a strong possibility that secondary meaning might prove to be a decisive issue in this case.

Further, Orbital's late disclosure is highly prejudicial to Wanfan because Wanfan was deprived of the opportunity to effectively challenge that critical direct evidence of secondary meaning at the summary judgment stage. *See, e.g.*, *G&G Closed Circuit Events, LLC v. Castillo*,

No. 14 C 2073, 2016 WL 3551634, at *9 (N.D. Ill. June 30, 2016) ("Discovery isn't merely about trial. For example, it plays just as important a role in summary judgment proceedings."). Since Wanfan had no opportunity to depose the witnesses in advance of summary judgment briefing, it was unable to probe whether a particular witness truly connects an item marked with CMY CUBES to a single source. Nor did Wanfan have an adequate opportunity to explore other issues that might undermine the probative value of the collective witnesses' testimony. For example, Orbital has provided few details as to how the particular witnesses were selected. Orbital has offered that the seventeen witnesses all responded to its mass email but it has not disclosed whether they were the only ones that responded. And if more than seventeen customers responded, what was Orbital's process for selecting those particular seventeen customers out of the larger pool of respondents? On the other hand, if the seventeen were the only respondents, that raises a question about the probative value of testimony from past purchasers of CMY CUBES products who Orbital affirmatively recruited to provide testimony about their impressions of its marks. *See Jap. Telecom, Inc. v. Jap. Telecom Am. Inc.*, 287 F.3d 866, 874 (9th Cir. 2002) ("Every small business with a descriptive name can point to at least a few former customers who remember its name [but that does not] mean[] that the relevant buying public makes the same associations."); *cf. Best Vacuum, Inc. v. Ian Design, Inc.*, No. 04 C 2249, 2005 WL 1185817, at *4 (N.D. Ill. Jan. 18, 2005) ("Surveys that target a party's core constituency and/or display the trademark in question may not be reliable indicators of secondary meaning."). These are only some of the avenues that Wanfan might have explored had the witnesses been disclosed in the ordinary course of discovery. That Wanfan had no opportunity to do so demonstrates the prejudice from the late disclosure. The harm cannot be cured by Orbital's offer to make its witnesses available for depositions prior to trial if the case would not proceed to trial

at all but for Orbital's surprise disclosure of the evidence needed to create a genuine dispute of material fact.

Given that Orbital's untimely disclosure of consumer-testimony evidence was neither justified nor harmless, exclusion of the non-disclosed evidence under Rule 37(c)(1) "is automatic and mandatory." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). And because it offers no consumer surveys, Orbital is left to demonstrate the existence of a dispute of fact with only circumstantial evidence of secondary meaning.

*2. Length and Manner of Use*

Orbital does not address the length and manner of use factor, but Wanfan highlights the relatively short amount of time that Orbital has used the CMY CUBES marks. In evaluating length and manner of use, the Court focuses on whether Orbital "had acquired a secondary meaning in its mark[s] before the time and place that [Wanfan] first began using the same mark." *WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-cv-3885, 2009 WL 6825247, at *6 (N.D. Ill. Dec. 9, 2009). Orbital began selling its first CMY Cube toy on September 3, 2020. (PRDSAF ¶ 2; Pl.'s Statement of Material Facts, Ex. B-7 at 8–9, Dkt. No. 52-9.) Meanwhile, Wanfan never specifies when it began selling its CMY Cube product, though it contends that Orbital's use of the CMY Cube descriptor has never been exclusive, pointing to several other similar products sold by third parties. (DRPSAF ¶ 8.) Viewing the facts in the light most favorable to Orbital, the Court uses the date of the filing of the complaint in this case—April 13, 2023—as the end of Orbital's exclusive use.

That period of just over two-and-a-half years is a brief period of time for the CMY CUBES marks to acquire distinctiveness in the minds of consumers. Indeed, the Seventh Circuit has found a longer, five-year period to be "so brief as to cast serious doubt upon the very possibility of having established a strong secondary meaning." *Gimix, Inc. v. JS&A Grp., Inc.*,

669 F.2d 901, 907 (7th Cir. 1983). Although "a short period of use does not ***preclude*** a party from demonstrating secondary meaning," neither is it a factor in favor of the claimant and, if anything, "weighs against [it]." *Echo Travel*, 870 F.2d at 1269.

*3. Amount and Manner of Advertising*

According to Orbital, the CMY CUBES marks have acquired secondary meaning thanks in large part to what it touts as its "vast" marketing efforts. In particular, Orbital claims that accounts associated with CMY CUBES have approximately 278,000 followers on TikTok, 81,000 subscribers on YouTube, and 158,000 followers on Instagram. (DRPSAF ¶ 10.) Altogether, Orbital estimates that its social media presence has resulted in approximately 534 million views. Orbital has also set up CMY CUBES booths at several retail trade shows and marketed its products on a successful YouTube channel. (*Id.* ¶¶ 9, 11.) In addition, numerous publications have written glowing articles about CMY CUBES marked products. (*Id.* ¶ 8.)

In placing so much reliance on numbers and self-laudatory language, Orbital leaves unaddressed the central concern of the amount and manner of advertising factor. "[I]t is the ***effect*** or ***success*** of the advertising, not the mere ***fact*** of advertising, that is the test of secondary meaning." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 577 (N.D. Ill. 1994) (internal quotation marks omitted). Orbital's evidence merely shows that it engaged in advertising; it does not shed any light on whether and to what degree its advertising caused consumers to perceive CMY CUBES as identifying a single maker of color cube toys rather than describing color cube toys generally. *See, e.g.*, *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1263 (S.D. Cal. 2018) ("A party asserting secondary meaning must demonstrate that its advertising was of a nature and extent such as to create an association of the term with the user's goods." (internal quotation marks omitted)); *Box Acquisitions*, 32 F. Supp. 3d at 937 ("There is little evidence that these advertisements had a significant effect—the record is devoid of details on when and for

long these advertisements were broadcasted, who may have seen these advertisements, and whether they reached consumers."). "The [C]ourt cannot just assume that a descriptive [term], plus money spent, equals high acquired distinctiveness." *Ultraclear Epoxy, LLC v. EpodexUSA Corp.*, No. 3:23-cv-00715, 2024 WL 966876, at *6 (M.D. Tenn. Mar. 6, 2024). Consequently, Orbital's advertising evidence does little to establish that CMY CUBES have acquired distinctiveness in the minds of consumers.

*4. Sales Volume*

With respect to sale volume, Orbital again attempts to establish secondary meaning simply by pointing to numbers. Thus, it emphasizes that it has sold more than 200,000 products under the CMY CUBES marks for sales exceeding $5.4 million. (PRDSAF ¶ 6.) As an initial matter, Orbital's only support for its sales figures comes from a statement in a declaration submitted by its president that fails to specify the period during which those sales occurred. (Saper Decl. ¶ 6, Dkt. No. 61.) Nor is the statement supported by any other evidence from which the Court could discern when the sales were made. The relevant period for purposes of the secondary meaning analysis is, at best, the period beginning September 3, 2020, and ending April 13, 2023. Yet Orbital does not provide any indication that its sales figures, provided in a declaration dated September 5, 2025, properly excludes sales occurring after April 13, 2023.

Even accepting the figures provided, Orbital does not provide any context that would tend to show that its volume of sales under the CMY CUBES marks is high enough to signify secondary meaning. For example, Orbital does not present evidence that would show how its sales stack up against other competitors in the market or even specify the market in which it competes. *See FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1356 (N.D. Ill. 1994) ("While some of the figures appear to be high, it is impossible to draw any meaningful inferences from this data without relevant comparative data."); *see also Nulux, Inc. v. Ramirez*,

No. 01 CV 3023 (ILG), 2008 WL 11411300, at *7 (E.D.N.Y. Oct. 31, 2008) ("Evidence defining the size of the market and the plaintiff's share of the market bolsters raw sales figures by providing the context out of which the figures are derived."). Without such context, the $5.4 million sales number (over an undefined period) is not of such a magnitude that would, by itself, suggest that the CMY CUBES marks have acquired distinctiveness. And while Orbital notes that CMY CUBES products are sold by well-known museums like New York's Museum of Modern Act (PRDSAF ¶ 7), evidence that "its products were sold through well-known retailers does not tell [the Court] whether the sales were stimulated by the mark." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1154 (10th Cir. 2013).

*5. The CMY CUBES Marks Lack Secondary Meaning*

In sum, the Court finds that Orbital lacks sufficient competent evidence to create a triable issue of fact as to whether its descriptive CMY CUBES marks have nonetheless acquired secondary meaning. Orbital failed to timely disclose its direct evidence of secondary meaning and therefore the Court does not consider it. That leaves Orbital with the difficult task of demonstrating that there is sufficient circumstantial evidence from which a jury could conclude that its marks had acquired distinctiveness notwithstanding that they had been in commercial use for less than three years and directly described the product being sold under them. No reasonable jury could find that Orbital carries that burden with only out-of-context sales and advertising numbers and evidence of some good press for its products. For that reason, the Court concludes that the CMY CUBES marks lack secondary meaning.

Having found no genuine factual disputes as to the descriptive nature of the CMY CUBES marks or their lack of secondary meaning, the Court necessarily concludes as a matter of law that they are invalid and subject to cancellation. The Court therefore enters summary judgment for Wanfan on its claims for a declaration of invalidity in Counts III and IV. Because

invalid marks cannot be infringed, the Court also enters summary judgment for Wanfan as to Count I's claim for non-infringement and as to the trademark infringement counterclaims asserted at Counts One and Three of Orbital's counterclaims.

**II. Fraudulent Registration**

Count V of Wanfan's complaint asserts a claim for fraudulent registration. Under 15 U.S.C. § 1120, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." To prove a claim for fraudulent procurement of a trademark, a plaintiff "must establish by clear and convincing evidence that [the defendant] deliberately attempted to mislead the [U.S. Patent and Trademark Office] by presenting materially false and misleading information when [it] applied for [its] trademark registration." *Box Acquisitions*, 32. F. Supp. 3d at 939.

According to Wanfan, Orbital obtained its trademark registrations by falsely representing in its applications to the U.S. Patent and Trademark Office that "CMY CUBES appearing in the mark has no significance nor is it a term of art in the relevant trade or industry or as used in connection with the goods/services listed in the application, or any geographical significance." (DRPSAF ¶ 3.) However, according to Wanfan, CMY and CMY CUBES are, in fact, terms of art; for this proposition, Wanfan cites its expert's opinions about the use of the term CMY in color theory education and that the phrase CMY CUBES has appeared in nearly 50 technical papers prior to 2020. (*Id.* ¶¶ 4–5.) Given that only Orbital moves for summary judgment on the fraudulent registration claim, the Court views the facts in the light most favorable to Wanfan and accepts that CMY and CMY CUBES are, in fact, terms of art.

Orbital nonetheless contends that Wanfan's expert demonstrates only that CMY and CMY CUBES are terms of art in the printing industry, but Wanfan has no evidence that they are also terms of art in the toy industry or the educational toy trade. But Orbital's argument on this point ignores that it represented to the U.S. Patent and Trademark Office not only that the CMY CUBES mark is not a term of art in the relevant trade or industry but also that the mark had no significance and was not a term of art as used in connection with the goods listed in the application. Certainly, a reasonable jury could conclude that either CMY or CMY CUBES had significance or was a term of art when used in connection with a toy cube distinguished by its application of CMY's color creation properties. Since Orbital stakes its claim to summary judgment on the truthfulness of its representation, the existence of a dispute of fact on that point suffices to defeat its motion for summary judgment on Count V.

**III. Attorneys' Fees**

Finally, Wanfan's motion for summary judgment requests that the Court award its attorneys' fees pursuant to 15 U.S.C. § 1117(a), which provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party" in a trademark infringement action. An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *LHO Chi. River*, 942 F.3d at 386–87 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Court finds that Wanfan's request for attorneys' fees is premature, given that there are multiple claims remaining in this case, including Wanfan's claim for fraudulent registration. *RooR Int'l BV v. Amused Clothing, LLC*, No. 4:19CV11-PPS/JPK, 2020 WL 6867180, at *2 (N.D. Ind. Nov. 23, 2020) ("The context of the fee award language within § 1117(a)'s provisions for ultimate remedies provides no support for any suggestion that an

award of 'reasonable attorney fees to the prevailing party' can be determined or made prior to the entry of judgment."). Moreover, the Court is dubious that summary judgment is the proper vehicle to seek an award of attorneys' fees under § 1117(a) as opposed to a separate motion. *See id.* at *1 ("Motions for an award of attorney's fees are governed by Federal Rule of Civil Procedure 54(d)(2), which requires that a claim for attorney's fees 'must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.'" (quoting Fed. R. Civ. P. 54(d)(2)(A))). Thus, the Court denies Wanfan's request for attorneys' fees without prejudice to it seeking an award under § 1117(a) once the case has been fully resolved.

**CONCLUSION**

For the foregoing reasons, Wanfan's motion for partial summary judgment (Dkt. No. 51) is granted in part and denied in part, and Orbital's motion for partial summary judgment (Dkt. No. 54) is denied. Summary judgment is granted in favor of Wanfan as to Counts I, III, and IV of its Complaint, as well as Counts I and III of Orbital's Counterclaims. The Court declares that the CMY CUBES trademarks, Reg. Nos. 6,913,023 and 7,070,552, are invalid and shall be cancelled.

ENTERED:

Dated: September 22, 2026

Andrea R. Wood
United States District Judge